LEWIS SUBLETT'S EX'R v. JAMES W. BROOKIE, ET AL.

**Administrator's Liability.**
> An administrator will be held personally liable if he sells the goods of his intestate and accepts security which would not have been accepted by a man of ordinary prudence.

**Liability of an Estate on Contract.**
> Before an estate can be held liable on a new contract by a personal representative about a new matter with which the decedent had no connection, it must clearly appear that the estate has been benefited by it.

APPEAL FROM ANDERSON CIRCUIT COURT.

January 20, 1880.

OPINION BY JUDGE COFER:

We are of the opinion that the judgment must be affirmed, if for no other reason because the allegations in the petition do not show that the contract sued upon was in any way beneficial to the estate of Armistead Miller, and because the administrators are not otherwise liable.

30

Notwithstanding the fact that it appears from the petition that the whole amount of the debt was collected by the sheriff, it may still have been true that if it had not been collected the administrators would have been liable on their bond for the loss of any part of the debt. It appears that within less than six months after the judgment was recovered Bond & Co. became insolvent, and went into bankruptcy without any assets, and that Grandison Smith, their surety, if not insolvent when the judgment was rendered against him in favor of Miller and Sublett, became so immediately afterward. In view of the facts appearing in the petition it is far from certain that the administrators could not have been made personally liable for any part of the note they assigned to Johnson Miller which might not have been collected.

An administrator will be personally liable if he sells the goods of his intestate and accepts a security for the price which would not have been accepted by a man of ordinary prudence, although those who become bound may have enough property subject to execution to pay the debt. The burden was on the appellant to show that the estate was benefited by the contract made with the administrators. His learned counsel does not dispute this. It was therefore incumbent upon him to show that the estate was not already secured by the responsibility of the administrators on their official bond.

If the debt had been lost and they had been sued for a devastavit, they would have been prima facie liable, and could only have escaped liability by showing that Bond & Co. and Smith, when the note was accepted, were possessed of such means and credit that a man of common prudence would have accepted their paper for such a sum of money, and the same facts are necessary to show that the estate was benefited by the contract sued upon. Aside from this, judgment had already been entered on the note, and it does not, and from the very nature of the case cannot, appear that it could have been set aside, or that a motion for that purpose would have been made.

It is alleged that the defense pleaded to the suit of Miller and Sublett applied alone to the other case, and was filed in the former by mistake of Bond & Co. and their counsel; but it is recited in the written contract that it had been pleaded in the former case, "and might with equal truth and propriety be used as a defense" to the latter. This recital must control the allegation in the petition. It thus appears that the defense might have been relied upon in either case. It is therefore impossible to say that Bond & Co. would have

withdrawn their defense if Sublett or Miller and Sublett had asked them to do so.   Nor can it be shown that if it had been done the judgment in favor of Johnson Miller could have been set aside.

The best that can be said for the appellant is that there is a remote possibility that but for the agreement sued upon the estate would have sustained loss, all we can do is to speculate as to what might have happened, and the law does not authorize personal representatives or courts to subject the estates of deceased persons to liability upon a balancing of possibilities or even of probabilities. Before an estate can be made liable on a new contract by a personal representative about a matter with which the decedent had no connection whatever it ought clearly to appear that the estate has been benefited by it.   When such is the case courts of equity may be authorized upon principles of natural justice to enforce the contract to the extent that the estate has been benefited, and in such cases we see no good reason why it may not be done in a direct action against the personal representative as such, although he may be personally liable on the contract.

Nor is the appellant entitled to recover against the administrators personally.   They expressly covenant in their fiduciary capacity, thereby excluding the idea of individual liability.   Upon this point *Lusk v. Anderson's' Adm'r,* 1 Met. 426, seems to be an authority in point.   The court said a judgment in personam against the administrator would have been erroneous, "because the petition showed that he executed the obligation sued on in his fiduciary capacity, and not as an individual.   It showed that there was no intention upon the part of Hopper (the administrator), in executing the obligation, to bind himself personally nor his estate."

That there was no prayer for a personal judgment is adverted to, not, as we think, as the principal ground of the decision, but as an additional argument to prove that the parties understood and intended the obligation to be that of the fiduciary, and not of the individual.

The language of the covenant here is that Miller and Portwood "bind and obligate themselves in their fiduciary capacity," and they sign as administrators, thus evincing by the express language of the covenant and the manner of executing it that they only intended

to bind themselves as administrators, and did not intend to become personally liable.

Wherefore the judgment is *affirmed.*

*D. L. Thornton, J. B. Houston, for appellant.* .

*Porter & Wallace, for appellees.*

